### Shepherd et al. v. Haymond.

Nov. 4, 1942.

782

Joe Hobson for appellants.

J. W. Howard for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and Reversing in part.

There are two branches of this case, one of which is ancillary and dependant upon the other, although it became and is the chief contest.

1. The State Banking Commissioner and a special deputy in charge of liquidating the Bank of Wayland, in Floyd County, closed in August, 1931, filed suit against J. H. Shepherd to recover on his promissory note to the Bank for $2,200. Grounds of attachment were appropriately set up and a general order of attachment was prayed. It was alleged that M. V. Wicker and nine other individuals were severally indebted to Shepherd, but "the exact amount and nature of the indebtedness" was unknown to the plaintiffs and those defendants were called upon to answer and make disclosure and be required to pay same into court for distribution. Shepherd traversed the allegations of the petition in respect to the execution and his liability on the note and denied any of the ten individuals were indebted to him. He also pleaded no consideration. After awhile, during the leisurely course of the suit, an amended petition was filed showing that Thomas S. Haymond had purchased the note and

the prosecution of the case was thereafter in his behalf as the party plaintiff. Collateral had been sold for $243 and credited. Judgment was rendered against Shepherd. He insists on this appeal that it was error.

Shepherd's testimony is that in 1922 when he was employed as a clerk by the Elkhorn Coal Corporation, Ira N. Morgan, a superior in employment, and a director of the bank, without his authority, had signed his name as the maker of a note for $2,400 to the bank. This had been repeated with each renewal until in September, 1930, when he, Shepherd, for the first time had signed a renewal note, as maker, with Morgan as endorser. The note sued on was a renewal of that one. Shepherd produced a letter addressed to him and signed by Morgan, dated December 8, 1922, confirming a conversation of that day relative to a note for $2,400 ''put in the Bank of Wayland in your name,'' and secured by certain collateral. This stated that Morgan had received the proceeds of the note and owned the collateral and that he would pay the principal and interest without expense to Shepherd. Shepherd testified that he had executed the two last notes as an accommodation and indicates that it was to extricate his friend, Morgan, from the consequences of his previous unauthorized signing of his name, of which, said Shepherd, he was ignorant until that time. On the other side Morgan testified that Shepherd had signed the original and all subsequent renewals as the maker as an accommodation to him. Morgan had subsequently been adjudged a bankrupt.

Irrespective of what had been done before, Shepherd's action in signing the note sued on clearly brings him within the definition of ''an accommodation party'' and makes him liable to the bank and its successors as the holders for value as provided in the Negotiable Instrument Act. KRS 356.029 (Sec. 3720b-29, Ky. Stats.); Howard v. Southern National Bank, 204 Ky. 71, 263 S. W. 719. The judgment against him is manifestly proper.

2. The other branch of the case relates to the subjection of the indebtedness of M. V. Wicker and the other nine individuals alleged in the Banking Commissioners' petition to be owing J. H. Shepherd to the judgment against him. In 1926, Shepherd loaned Morgan $3,000, which was evidenced by his note secured by certain collateral. As of October 1, 1930, Morgan substituted 10 notes for $300 each, severally endorsed by those persons

to secure them. J. H. Shepherd and his brother, B. F. Shepherd, by pleadings and testimony, claimed that in August, 1930, before the former had signed the note to the bank or its immediate predecessor, the Morgan $3,000 note had been sold to B. F. Shepherd for $2,500, paid in cash, and that J. H Shepherd, at the instance of and for his brother, had had the ten notes executed in substitution, although they, too, were made payable to J. H. Shepherd rather than to B. F. Shepherd, claimed to be the owner at that time. During that transaction and also when those ten notes were renewed on October 1, 1931, there had been no disclosure of the transfer or assignment to B. F. Shepherd as claimed.

In March, 1933, B. F. Shepherd sued one of the 10 individuals as the holder in due course of his note, pleading the bankruptcy and inability to recover of Morgan, the maker. A year later, March 21, 1934, he filed similar suits against the other nine endorsers. These cases were consolidated with the suit of the Banking Commissioners against J. H. Shepherd by agreement on May 4, 1934. On September 5, 1934, B. F. Shepherd filed a pleading in the consolidated cases denying material allegations in the Banking Commissioners' petition as to the indebtedness of the ten men to his brother, J. H. Shepherd, and the claims to have it subjected to the payment of his obligation. He prayed judgment in accordance with the prayers of his ten several suits. On the same day J. H. Shepherd filed an answer denying the claim of the Banking Commissioners to have these obligations subjected to the satisfaction of the note sued on. Depositions were taken on the issue of ownership of these ten notes, as well as on that of J. H. Shepherd's liability to the bank on the $2,200 note. Orders of submission for judgment were entered in January, 1935, and in October, 1937.

On September 6, 1939, the Banking Commissioners and Haymond filed a motion to set aside the order of submission and permit them to file an answer, counterclaim and cross petition against J. H. Shepherd and B. F. Shepherd and the ten other parties. On September 30, 1939, the court overruled Shepherd's objections and ordered the pleading filed. In it the plaintiffs denied B. F. Shepherd's ownership of the ten notes. For the first time they denied there had been a transfer or assignment of the notes for a valuable consideration before ma-

turity and for the first time alleged that the brothers had entered into a fraudulent scheme to defeat J. H. Shepherd's creditors and to prevent recovery on the bank's note. They averred that "the alleged purchase" of the ten notes by B. F. Shepherd was "fraudulent and fictitious and without any consideration whatever." This pleading prayed that the alleged assignments be declared null and void; that the notes be adjudged the property of J. H. Shepherd; that the Banking Commissioners and Haymond be adjudged a first and prior lien upon them; that the several garnishee-defendants be ordered to pay the amounts into court, and upon their failure that the plaintiffs be given judgment against them for the amount of their claim against J. H. Shepherd. Replies traversed the allegations and pleaded the five-year statute of limitations in bar of the relief sought. The affirmative allegations of the replies were controverted of record.

The ten defendants were served with summons to answer the suit but without notice that they were being summoned in the capacity of garnishees. None of them answered, but four of them testified to circumstances tending to show that J. H. Shepherd had not sold the notes in the early part of 1933.

The court adjudged that the transfer and assignment by J. H. Shepherd to B. F. Shepherd was fraudulent as to the former's creditor. Subject to the terms and conditions of succeeding paragraphs, a personal judgment was rendered in favor of B. F. Shepherd against the ten individuals on their notes. The general order of attachment sued out by the Banking Commissioners and the grounds thereof were sustained. Haymond, as assignee of the Banking Commissioners, was adjudged a lien upon and against the sums adjudged to be owing by the ten parties to satisfy the full amount of his judgment. It was further ordered that executions should issue against those defendants in favor of Haymond until his judgment on the $2,200 note had been satisfied and in favor of B. F. Shepherd for the balance. The defendants were authorized to satisfy the judgments in the same way without execution issuing.

The evidence fully supports the judgment that the transfer of the ten notes was a fraudulent assignment to defeat J. H. Shepherd's creditors, particularly the Bank of Wayland and its liquidators. But the legal

right of their successor, the appellee, Haymond, to profit thereby presents another question.

First. Although grounds for an order of attachment against Shepherd's property were alleged and its issuance asked and his ten alleged debtors were made parties and called upon to disclose, there is nothing in the record to show that the bond which is made a prerequisite to the issuance of an order of attachment by Section 198, Civil Code of Practice, was executed or that any such order was ever in fact issued. More than six months had expired between the filing of the petition and the issuance and service of summons on the eleven defendants. The issuance of the attachment was probably overlooked. The appellee has not succeeded in supplying what he says is a lost record of it. That part of the judgment sustaining an attachment is, therefore, obviously erroneous. From the recitation in the judgment, that the assignment of the ten notes was not made "prior to the issuance of the general order of attachment herein," it would appear that the subsequent adjudication of a lien upon those obligations was predicated upon an attachment.

Second. The question then appears whether the plaintiffs were entitled to the lien and to have the asset subjected to their debt by virtue of the fraudulent assignment only. Section 1906, Kentucky Statutes, declares that any assignment or transfer of personal property, including a chose in action, made with the intent to delay, hinder or defraud creditors is void as against such creditors. The same declaration is therein made as to real estate. Section 1907 is of like effect as to transfers without valuable consideration as same may relate to existing liabilities. Secton 1907a provides that upon the filing of a suit to set aside a fraudulent conveyance, transfer or mortgage of real property a lis pendens lien shall be created upon the property and the suit shall proceed as though it had been brought on a return of nulla bona of an execution in accordance with Section 439 et seq., Civil Code of Practice. None of the three sections of the statutes gives a creditor a lien or provides specially how a lien may be obtained on personal property fraudulently conveyed or transferred. Prior to the enactment of Section 1907a there must have been an attachment or a return of nulla bona on an execution as a basis for any proceedings of this character before the court was au-

thorized to adjudge a lien on real estate fraudulently conveyed. Martz v. Pfeifer, 80 Ky. 600; Behan v. Warfield, 90 Ky. 151, 13 S. W. 439; O'Kane v. Vinnedge, 108 Ky. 34, 55 S. W. 711; Williams v. Davenport, 181 Ky. 496, 205 S. W. 551. Since Section 1907a of the Statutes does not apply to the transfer of personal property, for the maintenance of a suit under Section 1906 relating thereto, there must have been a lien obtained either by attachment or by the levy of an execution, with a return of "no property found."

The reason for Section 439 et seq., of the Civil Code of Practice, is that the plaintff's claim or demand is purely a legal one and the law is inadequate to afford him complete redress by reaching over and out into the province of equity. Where the claim is of equitable cognizance, the court of equity "will at the same time, go the entire extent, and enquire into obstructions in the road of enforcng the demand," and a return of nulla bona on an execution is unnecessary. Halbert v. Grant, 20 Ky. 580, 4 T. B. Mon. 580; McMakin v. Stratton, 82 Ky. 226. Although the Banking Commissioners' petition was in equity (apparently so brought as being a step in the liquidation of the bank), their suit was plainly a common law action on a promissory note.

There was no lien created by merely having had summons served on the ten parties to have them answer the allegation of the petition and disclose what, if anything, they owed the defendants.

Third. A creditor cannot maintain a direct cause of action against his debtor's debtor as a mere garnishee or join him as a defendant and have him summoned only as such, the law governing garnishment being strictly construed and adhered to closely. Ray v. Peter Fox Sons Company, 272 Ky. 497, 114 S. W. (2d) 750. Where there is an order of attachment and it is sought to subject a debt or demand owing the defendant the order must be executed by delivering a copy to and summoning the person owing or holding it as garnishee, or a notice served with or given in the summons to answer as a garnishee. Section 203, Civil Code of Practice. That was not done here.

In Hartford Fire Insurance Company v. Green, 282 Ky. 466, 138 S. W. (2d) 933, it was sought to have a balance of the proceeds of a fire insurance policy subjected

to a debt owing the plaintiff by a nonresident defendant by making the insurance company a party to the suit as garnishee. It was held that could not be done except in accordance with the provisions of Section 439 of the Civil Code of Practice since there was no attachment. That ruling must be applied here.

In United Collieries v. Martin, 248 Ky. 808, 60 S. W. (2d) 125, 89 A. L. R. 971, an order of attachment issued and a debtor of the defendant being sued was served with a copy as garnishee. The garnishee subsequently paid a bank to which the creditor had assigned the obligation. It developed that the affidavit upon which the attachment rested was fatally deficient and that it had the effect of rendering the order of attachment void. We held the garnishee was not liable to the attaching creditor because of any acquired lien even though later, after the garnishee had disposed of the asset, the defective affidavit was corrected. The present situation is stronger for, as we have said, no lien on the asset sought to be subjected was ever acquired.

Therefore, the plaintiffs in the suit against J. H. Shepherd could not be heard on their amended petition attacking the transfer as fraudulent. Never having acquired a lien on the choses in action there was no basis for a judgment subjecting them to the satisfaction of J. H. Shepherd's indebtedness to Haymond, as assignee of the Banking Commissioners.

3. We are of the further opinion that appellee's proceeding to set aside the transfer of the notes as fraudulent was barred by the statute of limitations. Sections 2515, 2519, Kentucky Statutes; Moore v. Shepherd, 189 Ky. 593, 225 S. W. 484; Elkhorn Coal Corporation v. Hite, 225 Ky. 735, 9 S. W. (2d) 1083; Pierce v. J. B. Pierce's Trustee in Bankruptcy, 238 Ky. 495, 496, 38 S. W. (2d) 254. But it is sufficient to base the reversal of the judgment on the ground discussed, namely, that the Banking Commissioners never acquired a lien on them; therefore, could not subject the asset to the payment of their claim.

The judgment was rendered in December, 1939. The appeal was granted by the clerk of this court and the appellees served with summons on August 21, 1940. After having made several motions and by agreement been granted extensions of time in which to file his brief, the appellee moved the court to dismiss this appeal in Jan-

uary, 1942, when it would have been too late for the appellants to prosecute another. The ground is that the appellants have not made the ten payors of the notes, held to be subject to the satisfaction of appellee's judgment, parties to the appeal; that they are necessary and indispensable parties since they are bound by the judgment to satisfy appellee's claim even though it should be reversed. The case of Murphy v. O'Reiley, 78 Ky. 263, is relied on as authority. We think that opinion is distinguishable. Be that as it may, in response to the motion, the appellant has filed an original document signed by the attorneys for both parties on August 10, 1940, reciting that as the Shepherds were prosecuting an appeal from the judgment described, it was agreed that any funds collected on it from the ten defendants should be paid to and held by the attorneys jointly until it should be determined by the Court of Appeals which party is entitled to the money. The execution of this agreement is not denied. It is binding on the apellee and he will not be heard to say there is a defect of parties. The motion to dismiss the appeal is overruled.

The judgment on the $2,200 note against J. H. Shepherd is affirmed. That part which adjudges the transfer of the ten notes to B. F. Shepherd to be fraudulent and subjects the asset to the payment of the claim is reversed.